UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURELAINE FREEMAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-2909-X |
| | § | |
| YOUNG "ANGELO" C. PARK, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are a pair of motions for summary judgment: Defendants KOSB Arlington Arena d/b/a Knockout Sports Bar; KOSB Arlington d/b/a Knockout Sports Bar; KOSB Fort Worth, LLC d/b/a Knockout Sports Bar; and DN-KO The Colony, LLC d/b/a Knockout Sports Bar's motion for summary judgment, (Doc. 38), and Defendants Young "Angelo" C. Park; Knockout Sports Bar, LLC; KOSB Addison LLC d/b/a Knockout Sports Bar; and KOSB Deep Ellum, LLC d/b/a Knockout Sports Bar's motion for summary judgment, (Doc. 37). After reading the motions, response, reply, and applicable law, the Court **DENIES** both motions. (Docs. 37, 38).

### I. Background

This is a cookie-cutter employment dispute with a fact pattern that's anything but cookie-cutter. The parties more or less agree on the following facts: In 2017, Knockout Sports Bar hired Freeman. Freeman was hired to schedule staffing at the restaurant, perform quality-control over customer service relations, and perform

additional office tasks.  Defendant Park was Freeman's boss and direct supervisor. By 2020, Freeman had been promoted to upper-level management positions performing various executive duties for all Knockout Bars.  In 2022, Park fired Freeman.

The following facts, however, are highly disputed.  In 2018, Park became romantically interested in Freeman.  Park claims that his interest blossomed into a consensual relationship.  Freeman claims that there was never a consensual relationship, and she faked it to keep her job.

Freeman asserts that Park was, all thing considered, a monster.  Freeman claims that Park harassed her at work.  Specifically, Freeman claims that he made her continued employment at Knockout Bar contingent on continued sexual activity. To avoid meeting his demand, Freeman claims that she exaggerated a vaginal medical condition, but it was of no use because Park still threatened or required her to engage in other sexual activity or she would risk losing her job.  Freeman also claims that Park would consistently grope her in the parking lot during her employment.  Moreover, Freeman claims park would get drunk and physically and verbally abuse her both on and off the Knockout Bar premises such as: calling her "trashy," a "stupid white girl" or "American whore"; threatening to shoot an employee's son; and beating his own brother bloody.  In 2022, Freeman claims that she was terminated because she refused to perform one of Park's demanded sexual acts.

By contrast, Park claims that he and Freeman were in an up-and-down, consensual relationship between 2018 to 2022 when allegations of infidelity and dishonesty arose.  Park asserts that in the beginning, the two would meet each other after work for cocktails or food.  Park claims that this relationship progressed to the point where the two would meet each other at hotels and engage in consensual sexual relations.  Moreover, Park claims that 2020 highlights the two's ups and downs.  In 2020, Freeman told Park she was pregnant with his child, and that he was happy. But later in 2020, Park claims that Freeman got angry with Park, quit Knockout Bar, and worked in a strip club.  Over the next year, Park asserts that their relationship continued to hit ups and downs until a low point in 2022.  In January 2022, Park claims that the father of two of Freeman's children contacted him to inform him that he was still having sexual relations with Freeman and that the father of another one of Freeman's children—who Freeman claimed was a distant cousin who stopped by to help babysit—was still having sexual relations with Freeman.  Park fired Freeman from Knockout Bar shortly after that.

On November 11, 2022, Freeman filed a nineteen-count suit against eight Defendants—one individual and seven limited liability companies—in state court arguing that she was unlawfully fired.  Thirteen months later, Defendants removed Freeman's claims, which include claims under Title VII, the Texas Commission on Humans Rights Act ("TCHRA"), the Fair Labor Standards Act, and state-law contract and quasi-contract theories, to this Court.  A year after removal, Defendants moved for summary judgment on all nineteen claims.  Four months after Defendants'

motions for summary judgment, on February 23, 2024, the parties agreed to dismiss all of Freeman's federal law claims against all Defendants, Freeman's Negligent Infliction of Emotional Distress claim against all Defendants, Freeman's assault claim against a handful of Defendants, and Freeman's Intentional Infliction of Emotional Distress claims against a handful of Defendants.

In reviewing the motions, which include since-been-dismissed claims, the Court makes no opinion of any claims that have been dismissed. Moreover, although the parties have voluntarily dismissed all federal-law claims, the Court's discussion of Freeman's TCHRA claims will nevertheless include citations to Title VII cases because "courts follow Title VII jurisprudence when analyzing discrimination claims under the Texas Labor Code."[1]

## II. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] Courts "resolve factual controversies in favor of the

---

[1] *Brown v. San Antonio Food Bank*, No. 23-50564, 2024 WL 1300286, at *2 n.7 (5th Cir. Mar. 27, 2024).

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[4]

### III. Analysis

Defendants move for summary judgment on multiple grounds.  The Court will address each in turn.

The "non-employer" Defendants argue that Freeman has not met her burden in establishing that the "non-employer" Defendants constituted a joint employer or single integrated enterprise (*Trevino* factors).[5]  The Court disagrees.  There is a genuine dispute of material fact for each of the *Trevino* factors.[6]  A future fact finder must resolve this dispute of material fact.

Defendants argue that Freeman has not met her burden in proving her hostile work environment claim under TCHRA because, Defendants argue, a failed consensual relationship is not a protected class under TCHRA.  Indeed, while partners in a consensual relationship are not a protected class under TCHRA, there is a genuine dispute of material fact on whether Freeman and Park's relationship

---

[4] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

[5] Doc. 56 at 27–31.  This is the first instance of a since-been-dismissed claim affecting the motions.  Technically speaking, the single-integrated-employer analysis uses a slightly different standard in TCHRA cases.  *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 147 (Tex. 1999).  But Defendants cite to the *Trevino* factors in their brief because, at the time, Freeman's Title VII claims still existed.  So the Court references the *Trevino* factors as a means to respond to Defendants' arguments in their brief even if, technically speaking, the proper application of the issue is through the *NME Hospitals* factors.

[6] *See* Doc. 54.

was, in fact, consensual.  Resolving this dispute involves a credibility judgment for a future fact finder, not for this Court on summary judgment.[7]

Defendants advance two arguments relating to Freeman's national origin claim.  First, Defendants argue that any alleged discriminatory conduct is barred by TCHRA's statute of limitations.  Second, alternatively, Defendants argue that Park's alleged conduct wasn't offensive enough to constitute discrimination.[8]  The Court disagrees.  Freeman has provided evidence disputing both points.

Defendants argue that Freeman cannot establish that she was subject to actionable retaliation.  Freeman has provided evidence that she was retaliated against, such as Park's statement that, if Freeman felt like Park was discriminating against her, she could "hire a lawyer and [] pay his retainer with [her] tits."[9]  Thus, there is a genuine dispute of material fact on the issue of retaliation.

Defendants argue that Freeman cannot establish the elements of breach of oral contract.  To this end, Defendants argue that Freeman's performance was unsatisfactory, the agreement lacked consideration, and the agreement is barred by the statute of frauds.  The Court disagrees.  First, even if the oral agreement

---

[7] *Bowie v. Hodge*, No. 2:20-CV-2441, 2022 WL 102620, at *7 n.57 (E.D. La. Jan. 11, 2022) ("The purported consensual nature of [the parties'] relationship [in a Title VII case] will be an issue for trial, but at this stage, it remains a disputed issue of fact."); *Matthews v. United States*, 407 F.2d 1371, 1383 (5th Cir. 1969) ("The credibility of a witness is a question for the jury.").

[8] Doc. 56 at 16 ("[T]here is insufficient evidence that the conduct rises to the level of actionable national origin discrimination and therefore Plaintiff's national origin discrimination and harassment claims should be dismissed.").

[9] Doc. 54 at 42.

contained a satisfactory clause,[10] whether a party breached a satisfactory clause is determined by a jury.[11]

Defendants' argument that the oral agreement lacked consideration also fails. In Texas, an employee's agreement to do work "beyond the scope of his original duties" constitutes adequate consideration supporting a separate contract.[12]  Here, Freeman has produced evidence that she agreed to perform duties beyond the scope of her original duties, including helping new restaurants open, negotiating with vendors, and setting up training and licensing for new restaurants.[13]  If that's true, there's adequate support for an additional, oral contract between Freeman and her employer. Thus, there is a genuine dispute of material fact on this point.

Defendants' argument that the agreement is subject to the statute of frauds also fails.  The agreement, which included Freeman's responsibilities related to opening up a new restaurant, did not set a time for completion.  So although Park may have had a certain expectation that Freeman's performance may take more than one year, because "the contract merely provides for the performance of a particular act or acts, ***such as the building of a house***, which can conceivably be performed within one year, the statute does not apply, however improbable performance within one year may be."[14]

---

[10] Another disputed point.

[11] *Turner v. Ewing*, 625 S.W.3d 510, 520 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (affirming jury's finding that a party was "not acting in good faith in claiming to be unsatisfied").

[12] *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 153 (Tex. App.—Texarkana 1988, writ denied).

[13] Doc. 42 at 342–43.

[14] *Hall v. Hall*, 158 Tex. 95, 99, 308 S.W.2d 12, 15 (1957) (emphasis added).

Defendants argue that Freeman's quantum meruit and promissory estoppel claims fail because she cannot prove detrimental reliance. The Court disagrees. Freeman has put facts into the record that she justifiably relied on Park's promise to pay her an additional $10,000 for taking on new work-related responsibilities related to opening a new restaurant.[15] Thus, there is a genuine dispute of material fact on this issue.[16]

Defendants' final argument is that Freeman's tort claims are preempted by the TCHRA because the TCHRA provides the sole cause of action for claims arising out of the workplace.[17] The Court disagrees. Under Texas law, whether the TCHRA preempts common-law torts depends on the "gravamen" of the plaintiff's claims.[18] In determining the "gravamen" of an assault claim, courts consider things such as "the severity and frequency of the assailant's conduct, the nature of the plaintiff's claims, and the fundamental theory of potential employer liability."[19]

There is a dispute of material fact over at least one of the considerations courts use in determining the "gravamen" of an assault claim: the nature of Freeman's

---

[15] Doc. 54.

[16] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018) ("Justifiable reliance usually presents a question of fact.").

[17] Although all Defendants argue this point in their brief, the parties have since dismissed many of the tort claims. Freeman's negligent infliction of emotional distress claim against all Defendants has since been dismissed. And Freeman's assault claim and intentional infliction of emotional distress claim has been dismissed against the following Defendants: Knockout Sports Bar, LLC, KOSB Addison LLC d/b/a Knockout Sports Bar, KOSB Arlington Arena, LLC d/b/a Knockout Sports Bar and Knockout Sports Arena, KOSB Arlington, LLC d/b/a Knockout Sports Bar, KOSB Deep Ellum, LLC d/b/a Knockout Sports Bar, KOSB Forth Worth LLC d/b/a Knockout Sports Bar, and DN – KO The Colony, LLC d/b/a Knockout Sports Bar.

[18] *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 285 (Tex. 2017).

[19] *Id.*

8

claims.  Freeman contends that at least one, if not multiple, assaults occurred after hours and off premises.[20]  By contrast, Defendants disagree that the nature of Park's assault occurred after hours and off premises.[21]  Sure, while preemption is usually a question of law for a court to decide, a genuine dispute of material fact exists in determining the "gravamen" of Freeman's tort claims.[22]

## IV. Conclusion

Accordingly, the Court **DENIES** Defendants' motions for summary judgment. (Docs. 37, 38).

**IT IS SO ORDERED** this 22nd day of July, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[20] Doc. 54.

[21] Doc. 56 at 25 (Defendants argue that "Plaintiff has intertwined all facts" in her tort claims.).

[22] *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) ("Sometimes, however, factual issues must be resolved before the legal question can be decided."); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) ("We have long recognized that the Texas Constitution confers an exceptionally broad jury trial right upon litigants.  And we have warned that courts must not lightly deprive our people of this right by taking an issue away from the jury.") (citations omitted).